Lucy Backes Carey, petitioner,

v.

David Stuart Carey.

[Decided May 17th, 1920.]

1. In a suit for divorce and custody of children, where an application is made for a preliminary injunction against a judge of the county juvenile court to restrain him from sending the children to a children's home, such application will not be granted in the absence of any entry of judgment in the juvenile court, although it is alleged that the proceedings in that court were irregular, the evidence insufficient, and that the whole proceeding in that court was an interference with the suit in this court.

2. The chancellor, as *parens patriæ* of infants, will not, except in a clear case of pressing necessity, restrain the carrying out of legislative provisions relative to the welfare of children by the authorities duly constituted therefor.

3. *Quære*, as to the validity of an order dealing with even the temporary custody of a child, made by the court of quarter sessions, under the Children's Welfare act (*P. L. 1915 p. 441*) when such child has previously become a ward of chancery by the institution of a suit in chancery affecting its person or property.

On petition, &c. On application for preliminary restraint.

*Mr. William Hartshorne,* for the motion.

Buchanan, V. C.

The original petition in this cause is filed by the wife for divorce and the custody of the three children, two, five and six years of age.

Application by the wife was subsequently made in the cause for alimony *pendente lite* and custody *pendente lite.* When that application came on for hearing the circumstances disclosed led to a continuance of the hearing thereon until the final hearing of the cause, with leave, however, to either party to bring on the same at an earlier date, on notice.

Prior to the above-mentioned application by the wife, but subsequent to the commencement of the suit, proceedings were instituted by certain of the public authorities in the county where the parties resided, against both parents, under the act of April 8th, 1915, commonly known as the Children's Welfare act (*P. L. 1915 p. 441*), and subsequent to the coming on and continuance of the wife's application in this court, as above mentioned, a hearing was had on the complaint under this statute, before the juvenile court, and that court found the defendants "guilty," as appears by the minutes of that court, and continued the matter for one month, and advised that during that time "something should be done by the parties in interest; otherwise he would place the children in St. Michael's Home at Hopewell." No order or judgment was entered.

Application is now made to restrain the incumbent of the office of judge of the said juvenile court from sending the children to said home. The first ground urged in support thereof, is that the proceedings under the Children's Welfare act being purely statutory and there having been a failure in several respects to observe the statutory requirements, the juvenile court had entirely failed to acquire jurisdiction. This alone would not seem to warrant interference by this court, in the absence of a showing that there was no adequate redress at law such as by *certiorari* and stay, or other appropriate proceeding.

It is further urged that the evidence before the juvenile court was not such as to warrant the removal of the children from the mother. This court is not a court of review for the proceedings in the juvenile court, and even if it were alleged that there had been an abuse of discretion by the person holding the office of judge of that court, not only has there been no judgment or order entered, but the entire evidence is not before this court in the moving papers.

Lastly, it is contended that the juvenile court proceedings are an interference with the proceedings in this court in the action pending herein, the matter of the custody of the children having come into the actual exercise of this court's jurisdiction

upon the commencement of the divorce action. This raises a much more difficult question, one which ought not to be adjudicated upon a motion of this kind unless absolutely necessary, and which under the circumstances of this case, I do not deem it necessary to decide. The jurisdiction of this court, as *parens patriæ*, over the persons and property of infants is of course well known and wide in scope. It has been repeatedly held that the institution of any proceedings in this court which look toward the affecting of the person or property of the infant, is sufficient then and there to constitute that infant a ward of this court. On the other hand, the statute in question does not deal solely with the custody of children. Many of its provisions deal with punishment of parents for cruelty to or neglect of children. The proceedings in the case at bar were on complaints against the parents for neglect of the children. It cannot therefore be said as to the proceedings under that act that there is any interference with the custody of the children, or with the jurisdiction of this court over such children, by the mere commencement or maintenance of such proceedings, nor by the entry of judgment, if that judgment be punitive against the parents only. Not until the entry of a judgment or order purporting to affect the custody of these children would the argued interference take place.

In many cases the fact that the jurisdiction of this court had attached to the infants might not be known to the statutory court. Doubtless any such tribunal, contemplating the advisability of any order affecting the custody of children known to have become wards of this court would bring the matter to the attention of the chancellor before so doing.

It is with the utmost reluctance, and only in cases of pressing necessity, that any restraint is directed against the carrying out of legislative provisions by the authorities duly constituted therefor. In the present case, assuming that the entry of the suggested order or judgment by the juvenile court would be improper or invalid for any of the reasons mentioned, no such order or judgment *has* in fact been entered or made. I do not feel justified in assuming, notwithstanding the reported ob-

servations of that court, that any improper or invalid order or judgment will be made. If an order affecting the custody of these children be in fact made, the matter can then be determined, either on *habeas corpus,* or perhaps upon a renewal of the present application directed against the enforcement of such order. If the children be wards of this court, I do not think that an order as to their custody made by such statutory tribunal without the participation or consent of the chancellor, would be *"res adjudicata."* The situation would be obviously somewhat different in that behalf from that in *Roarke* v. *Roarke, 77 N. J. Eq. 181.*

The application will therefore bé denied, but without prejudice to a renewal as above indicated, if future developments render such course necessary or advisable.